## Case No. 663.

### The AUSTIN.

[3 Ben. 11.][1]

District Court, S. D. New York. Nov., 1868.

COLLISION IN NORTH RIVER—VESSEL AT ANCHOR —LIGHTS—APPORTIONMENT—COSTS.

1. Where a towboat was coming down the Hudson river, with a heavy tow, and her pilot saw lights ahead, which appeared to be arranged as if on a tow coming up, but which, when he approached, were changed, but he was not then able to avoid the object, which proved to be two wrecking vessels fastened together by beams, and anchored over a wreck: *Held*, that the towboat was in fault in approaching the object so near that she could not avoid it;

2. The wrecking vessels were substantially a single object, and, whether they were called on to exhibit the light provided by article 7. or that provided by article 9, of the act of April 29th, 1864, should have exhibited but one light, or, if they exhibited two, the two should have been similarly arranged;

3. Both vessels were in fault, and the damages must be apportioned, and the libellant must recover costs.

[Cited in The Mary Patten, Case No. 9,223; Vanderbilt v. Reynolds, Id. 16,839; The Hercules, 20 Fed. 205.]

[In admiralty. Libel in rem for damages caused by a collision. Decree apportioning the damages between the parties, with costs to the libellants.]

W. J. Haskett, for libellants.

Benedict & Benedict, for claimants.

BLATCHFORD, District Judge. This is a libel for a collision, filed by Justin F. Tal-

[1] [Reported by Robert D. Benedict, Esq., and here reprinted by permission.]

mage and Thomas Kivlin, the owners of two wrecking vessels, for damages caused to those vessels by a collision which occurred between them and the steamboat Austin, at about seven o'clock in the evening of the 23d of November, 1865, in the Hudson river, off and a little above Teller's point. The wrecking vessels were boats connected together by timbers running from one to the other. They were arranged over a sunken sloop, which they were employed in raising. One of the boats had a cabin in which the wreckers lived. That boat had a mast. The other boat was an open boat. The structure, composed of the two boats and the connecting timbers, was substantially a single object. It was anchored in its position, and was considerably over on the eastern side of the channel, and to the eastward of the middle of the river. The weather was clear, so that lights could be seen two or three miles off, the tide was ebb, and the wind was northeast. The Austin was going down the river, toward New York, towing thirty-two boats, four on each side of her, and twenty-four attached to her by hawsers behind, in five tiers. That one of the wrecking vessels which had a mast, had a light in a lantern, suspended in the air some fifteen feet above the deck, and about the same distance from the mast, upon a rope which ran from the gunwale to the mast-head. In addition to this light, there was another light, in a movable lantern, on the deck of one or the other of the two wrecking vessels. This latter lantern was not intended to be stationary, nor was it in fact stationary, for, not long before the collision, it was moved from a position on one boat to a position on the other boat, but still it was kept visible to approaching vessels, equally with the suspended lantern. The pilot of the Austin testifies, that he saw the lights on these wrecking vessels at a distance, and that the appearance presented by them was such as to lead him to suppose that the object on which they were was a steamboat coming up the river with a tow, the arrangement of lights, as exhibited to his eye, being the same as was then shown on his own vessel, and used by other steamtugs when towing tows; that, when he had reached within about half a mile of the lights, there was a change in their positions relatively to each other, caused by the movement of the lower light; that he then concluded that the object must be something other than a steamtug towing; that he then saw that the only chance of avoiding a collision was to try and go to the eastward of the object; and that he sheered the Austin accordingly, and she passed in safety, but some of the boats in tow of her struck the wrecking vessels. It is clear, from the evidence, that the movement of the light from the deck of one of the two wrecking vessels to the deck of the other, was seen by the pilot of the Austin, and led to his change of course. But the difficulty in the case, on the part of the

Austin, is, that she ought not, with her unwieldly tow, subject as it was to the action of the tide and of the wind, to have approached so near to the object, whether it was supposed to be a tow, or something else, as to be unable to avoid it. It appears from the testimony of the pilot, that when he first saw the light at a distance, he could not tell what it was, and came nearer to it, and thought it was a tow, and remained of that opinion till the light on it moved. He ought not, in uncertainty, to have approached, with his bulky and helpless tow, so near. How he was going to avoid her, if she was a tow, does not appear, unless he relied upon her avoiding him. I cannot resist the conclusion that the Austin was in fault. But I think the wrecking vessels were also in fault. Whether it be claimed that the wrecking vessels were required to exhibit the light provided for vessels at anchor, by article 7 of the act of April 29, 1864, or the light provided for open boats at anchor, by article 9 of the same act, they should have exhibited but one light, or, if they exhibited two, the two should have been similarly arranged. The actual arrangement was calculated to deceive an approaching vessel, and, I think, did contribute to induce the pilot of the Austin to think that the object carrying the lights was a steamtug towing, and to approach nearer than he otherwise would.

There must be a decree apportioning the damages equally between the parties, and giving costs to the libellants.