## THE ARTHUR.

### (District Court, S. D. New York. April 19, 1901.)

COLLISION—DREDGE AT ANCHOR—MISLEADING LIGHT.

A dredge anchored in the East river, while at work, besides her staff light, carried another white light, considerably lower down, not required by the rules, and which was mistaken by a tug coming up the river with a tow in the evening, the two lights being similar to those customarily carried by a tug in motion, but without a tow, the lower being visible only astern. The tug did not discover the mistake until within 300 feet, and her tow came into collision with the dredge, and injured it. *Held*, that both were in fault, the dredge for carrying a misleading light, and the tug in not sooner discovering that the dredge was stationary.

In Admiralty. Suit for collision.

Frederick W. Park, for libelant.

Hyland & Zabriskie, for claimant.

BROWN, District Judge.    Between 7 and 8 o'clock in the evening of October 25, 1900, the derrick scow Daylight, while at anchor for the purpose of excavating, under government direction, a bed of rock in the East river off Third street, was run into by the scow Clingstone, which was coming up the East river in the flood tide in tow of the steam tug Arthur on a bridle hawser about 150 feet long, and received damages, to recover which the above libel was filed.    There is some difference about the lights exhibited by the dredge to the Arthur as respects their position; but this seems to be not very material.    She was showing one high light from 20 to 25 feet high, near her mast, and another light which I find upon the evidence was near her bow, about 10 or 12 feet above the deck.    When the Arthur was about 1,500 feet below the dredge and about astern of her, she received a signal of one whistle from a heavy tow overtaking her from astern, which soon overhauled and passed her on her starboard side.

The Arthur claims to have been misled by the two white lights of the dredge into supposing that she was a tug underway and proceeding up river, and that she did not ascertain the fact that the dredge was at anchor until she had come within about 300 feet of the dredge, when the Arthur herself was able by porting to go on the starboard side of the dredge without difficulty, but not in time to swing her heavy tow astern so as to clear the dredge.

The Arthur's evidence shows that it has long been a common practice for tugs when under way without a tow not only to carry the single white staff light required by the rules, but also a white light on the rear side of the tug's house and beneath the overhanging roof, so that the low light will be seen astern, but obscured from all craft forward of her beam.    The evidence also shows that this low light being usually about in the middle of the tug, presents with the high light the appearance of two vertical white lights more widely separated than the two towing lights, which are required to be about 3 feet apart; and that the Arthur supposed that the lower white light that was seen on the dredge nearly vertically beneath the higher one, was such a low aft light, indicating that the dredge was under way. This low light, however, is not provided for in the rules, though it does not seem to be forbidden by rule 11, because it is not likely to be mistaken for any other light.

This dredge was not authorized to carry two white lights while at anchor.    She was but 75 feet long, and had therefore by articles 1 and 11 of the act of June 7, 1897, no right to carry more than one white light while at anchor.    Under the common practice above referred to, this second white light, being seen about 10 feet below the other, would naturally be mistaken by the Arthur for the low light of a tug in motion while the Arthur was at some distance; and as the Arthur was at first and for some material period misled thereby, I think the dredge must be held in fault for carrying an unauthorized and misleading light.    The Austin, 3 Ben. 11, Fed. Cas. No. 663; The Maurice B. Grover, 34 C. C. A. 616, 92 Fed. 678.

On considering the other evidence, however, I do not think this fault of the dredge is sufficient to acquit the Arthur of blame for inattention and negligence. The bow light of the dredge was in fact considerably higher than any such low aft light would naturally be upon any ordinary harbor tug, and this would have been perceived by the Arthur had reasonable attention been given to the dredge when much more than 300 feet distant. But besides this, the Arthur was proceeding slowly under one bell, and it was wholly inconsistent with the Arthur's supposition that the boat ahead was an unincumbered tug under way, that the Arthur, while proceeding so slowly with a heavy tow, should be overhauling the dredge so rapidly; and reasonable attention to the dredge would have shown this fact to the Arthur very soon after the dredge was first noticed 1,500 feet away. In both these ways reasonable attention to the dredge would have corrected any original mistake of the Arthur in supposing the dredge to be in motion, in ample season to enable the Arthur and her tow to avoid the dredge. As it was, the Arthur, according to her testimony, did not observe that she was gaining on the dredge until within 500 or 600 feet of her, and did not attempt to go to the starboard until within 300 feet. This, it seems to me, was such obvious negligence in proper attention to the dredge as to make the Arthur equally in fault; and the libelant should therefore have a decree for half his damages, and for the costs to be divided.